366 P.2d 70

Walter W. JACOBSON, Sandra Williams and Brent T. Lynch, Plaintiffs and Appellants,

v.

STATE LAND BOARD of the State of Utah et al., Defendants and Respondents.

No. 9401.

Supreme Court of Utah.

Nov. 8, 1961.

Gustin, Richards & Mattsson, Salt Lake City, for appellants.

Walter L. Budge, Atty. Gen., Richard R. Boyle, Asst. Atty. Gen., David L. McKay,

Paul E. Reimann, Van Cott, Bagley, Cornwall & McCarthy, Senior & Senior, William G. Fowler, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a mandamus petition seeking a writ "requiring the State Land Board to take over the management and control of the lands described and the leasing thereof provided by law." Affirmed. No costs awarded.

The lands [1] involved originally were leased to the defendants or their assignors by the federal government, then the fee owner, "subject to the terms and provisions of the Act of February 25, 1920 (41 Stat. 437)," [2] as stated in the leases.

For the purpose of this case it will be assumed that the leases were extended by the government for five years after application in accordance with requirements, *after* the fee was transferred to Utah under the so-called Dawson Acts [3] that provided for transfer to the state of mineral school lands although encumbered in certain respects, such a transfer theretofore being prohibit-

1. So-called "school lands."
2. Commonly known as the Mineral Leasing Act, which, in part, says: "Upon the expiration of the initial five-year term of any noncompetitive * * * lease * * * maintained in accordance with applicable statutory requirements and regulations, the record titleholder there-

of shall be entitled to a single extension of the lease, unless then otherwise provided by law * * *." (30 U.S.C.A. § 226-1).

3. Act of April 22, 1954 (68 Stat. 57) and Act of July 11, 1956 (70 Stat. 529) 43 U.S.C.A. § 870.

ed under previous legislation and case law.[4] It will be assumed further that the plaintiffs filed applications with the State Land Board for leases on the subject lands after transfer of the fee but *before* the extensions were granted by the federal government, which applications were denied.

The plaintiffs' points on appeal were 1) that the U. S. was *not* an indispensable party, 2) that Utah became fee owner of the lands on acceptance by the government of appropriate surveys and 3) that thereafter the State Land Board had the duty to "take complete control of the leasing of the lands at the expiration of the *original* term of the Federal leases."

As to 1) : The point is moot in the light of what we say and hold here.

As to 2) : It is conceded that the State became fee owner of the lands.

As to 3) : The record indicates that the State Land Board did take control and management of the lands, including the receiving of rentals, except as it concluded that it could not interfere with the extant extensions.

The real bones of contention are an interpretation of the phrases in Sec. 17, to the effect that the lessees "SHALL BE ENTITLED TO A SINGLE EXTENSION OF THE LEASE" and *"unless then otherwise provided by law,"* in the light of the stipulated facts and federal legislation pertinent thereto, and whether Sec. 17 was nullified upon the transfer from the government to the State of the lands in question.

Plaintiffs urge that the italicized language came to life simultaneously with the birth of the Dawson Acts. Defendants urge the contrary and insist that the capitalized language was perpetuated and controlling into the five-year extension area, providing the original applicants complied with requirements for making application for an extension.

Plaintiffs' contention that "after title passed to the State, Sec. 17 of the Mineral Leasing Act would not control" is a conclusion not based, at least, on any cited authority, and is a conclusion we do not share. It would render impotent any possibility of an extension specifically provided for in the lease ever being effected. The Dawson Acts themselves negative any such conclusion, as do the leases themselves, which leases support such conclusion by stating that they are executed "pursuant, and subject to the terms and provisions of the Act of February 25, 1920, (41 Stat. 437) as amended and to all reasonable regulations of the Secretary of the Interior now or hereafter in force when not inconsistent with any expressed and specific provisions herein, which are made a part hereof."

---

4. United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473.

**310**

Nowhere is found any language attempting to abrogate the duties or prerogatives reflected in existing leases, and nowhere in the record is reflected any other legislation or regulation that would impel a determination otherwise.

To say that, ipso facto, the Dawson Acts directly or by implication repealed pertinent sections of the Mineral Leasing Act would do violence to their unambiguous language and to fundamentals of land tenure.

We believe that stated simply, the federal government transferred its land to the State, burdened with any interest in the land then existing, real or inchoate, including the specifically stated, absolute right to a five-year extension upon performance of federal requirements concerning applications therefor. It was akin to the common, universal and binding legal concept that land is transferable subject to the rights of those possessing interests therein short of the fee. It would seem the transfer here was accomplished in a vehicle in which there were farepaying passengers entitled to reach their destination irrespective of any change in driver. The government had a duty to grant or procure the extension, absent legislation to the contrary, upon compliance by the applicant with the specific terms of the lease and pertinent required application formalities. The State would have to and must recognize the lease terms and such application requirements as an adjunct to the transfer, as it well must recognize *any* condition the government might impose upon any transfer to it if the State chooses to accept the muniment of title. We hold that the State must recognize the leases and the extensions as well as the terms incumbent upon the lessees to perform with respect to how an extension might be secured. Consequently, the State Land Board did not err in denying the applications of the plaintiffs. (Emphasis added.)

WADE, C. J., and McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.